JOHN E. KRAFT, Respondent, *v.* SAMUEL D. COYKENDALL
*et al.*, Appellants.

*Supreme Court, Third Department, General Term, Sept.* 21, 1889.

1. *Estoppel.　In pais.*—Where a list of all the indebtedness of a corporation,
with the exception of plaintiff's claim, was delivered by his co-trustees
in his presence to defendant, who, in reliance upon the correctness of
such list, became a trustee, the plaintiff is estoppel from asserting, in an
action against defendant and other trustees for failure to file a report,
such suppressed claim.
2. *Evidence.　Corporation.*—The transfer stock book is evidence of trans-
fers of stock and dates thereof, in an action against the trustees for
not filing report.
3. *Same.*—Such book is presumably known to a trustee and stockholder,
who has the right of access to, and opportunity to examine, it.

Appeal by the defendant from a judgment entered in the
Ulster county clerk's office, upon the report of a referee.

*S. L. Stebbins,* for appellants.

*Wm. Lounsbery,* for respondent.

LANDON, J.—I think this judgment should be reversed
upon the facts.

The action is to recover $2,175, alleged by the plaintiff to
have been loaned by him in June, July and August, 1876, to
the Freeman Printing and Publishing Association, a corpo-
ration of which the defendant, Haight was then trustee, and
of which the two defendants, Coykendall became trustees,
October 14, 1876. The defendants failed to file in January,
1877, the report required by the statute, and the plaintiff

having failed, upon judgment and execution, to collect the amount from the association, seeks recovery of the same in this action as a penalty.

The question at issue is whether $2,175, which the plaintiff advanced to one Fowks, who was the president of the association, was advanced on its credit, or in pursuance of an undertaking on the part of the plaintiff to buy of Fowks a controlling amount of stock of the association.

The plaintiff testified that he advanced the money to Fowks upon the credit of the association, and upon Fowks' request in its behalf.

Fowks testified that the association was financially embarrassed, that the plaintiff representing that he desired to obtain control of it said he could raise money enough from political and other friends to enable him to do it if Fowks would sell him the stock; this Fowks promised to do, and that the money was advanced to him by plaintiff upon that arrangement. That the plaintiff not raising money enough, the arrangement was abandoned, and Fowks and the plaintiff settled on the 30th of October, 1876, when the plaintiff gave him the receipt in full of which the following is a copy:

"RONDOUT, N. Y., October 30, 1876.

"In consideration of the transfer to me of five shares of stock in the Freeman Printing and Publishing Association, and the sale to me of four shares in the same, now held by me by power of attorney in blank, and the surrender to me of my note for $1,850 by Horatio Fowks, I hereby acknowledge full satisfaction of all claims that may be due from said Fowks, of any kind whatever, to date.

"JOHN E. KRAFT."

The plaintiff denies that the receipt was given for any part of the $2,175, but alleges it had reference wholly to other transactions.

The plaintiff is not corroborated. Fowks' character is impeached, but his testimony is corroborated by that of S. D.

Coykendall and Haight, and by the circumstances. The circumstantial corroboration is very full and conclusive. To present the details of this corroboration would be to summarize the defendant's points, a labor which we omit.

Independently of Fowks' testimony, we think it appears, and should have been found as a fact, that on the 14th day of October, 1876, a meeting of the trustees of the association was held ; the plaintiff was then a trustee, and was present ; the defendant S. D. Coykendall was not a trustee, but was present at the meeting, and was in negotiation with the trustees to take control of the association and pay its debts. The plaintiff's co-trustees, in the presence of the plaintiff, then presented said Coykendall with a list purporting to be a full list of all the debts of the association. No claim of the plaintiff or debt due from the association to him was contained in said list, and this the plaintiff well knew, and he did not otherwise make any claim.

Said Coykendall, relying upon the truth of said list, completed the negotiation aforesaid, and in pursuance of it the plaintiff and another trustee then resigned, and S. D. Coykendall and his appointee, the defendant, George Coykendall, were elected trustees in their places. The plaintiff made no claim to the defendants that the association was indebted to him until after the omission to file the annual report in January, 1877. These facts, which we deem clearly established, estop the plaintiff from asserting now the claim which he suppressed then.

We think the defendant was entitled to read from the stock transfer book of the association the entries therein of the transfer of certain stock from D. S. Hasbrouck to Fowks. The fact was not in dispute that at the time of the arrangement between Fowks and the plaintiff, under which plaintiff undertook to raise and advance money to Fowks, Fowks was the owner of about five-sixths of the entire capital stock, that the association was embarrassed, that Fowks had pledged more than one-half of the entire stock to the defendant, S. D.

Coykendall to secure him for loans both to the association and to Fowks. Fowks testified that it was part of his arrangement with the plaintiff that Fowks should obtain stock enough to enable him to transfer the majority of it to plaintiff. Fowks testified that he bought $1,500 of stock of Hasbrouck in order to have enough to carry out his arrangement with plaintiff, and also procured a release from Coykendall of some of the stock pledged to him.

Fowks, upon his cross-examination, was unable to give the date of the transfer of stock from Hasbrouck to himself, or an exact account of other transfers made about the same time.

The defendant, in order to corroborate Fowks and show the exact dates and transfers, offered to read from the stock transfer book of the association. The offer was overruled and the evidence excluded. This book was not simply a narrative of the transaction, but was the transaction itself in writing, and hence admissible.

Kraft was made a trustee of the association, and its general manager on the 8th day of July, 1876, after he had advanced $1,525 of the 2,175 in question. This fact corroborates Fowks' version. The transfer book shows that Hasbrouck transferred $1,500 of stock to Fowks; four days later Hasbrouck resigned as trustee to make the vacancy which was filled by the election of the plaintiff. The transfer and its date, the resignation and election all fitted in with Fowks' version of the arrangement. Other transfers of stock appeared upon the book consistent with Fowks' version. As a record of the business of the corporation it was presumably known to a trustee and stockholder who had the right of access to the book and opportunity to examine it. Blake v. Griswold, 103 N. Y. 429.

The judgment is reversed, referee discharged, new trial granted, costs to abide the event.

LEARNED, P. J., concurs; INGALLS, J., dissents.

### Note on " Corporate Books as Evidence."

The books of account of a corporation are not competent evidence to establish an account or claim against a trustee or stockholder in an action brought in behalf of the corporation. Rudd *v.* Robinson, 126 N. Y. 113.

The trustee is not chargeable with a knowledge of the entries made in the books of the company. Id.

A shareholder in a corporation is not chargeable with constructive notice of resolutions adopted by the board of directors, or of provisions in the by-laws regulating the mode in which its business shall be transacted with its customers. Pearsall *v.* W. U. Tel. Co., 124 N. Y. 256. When dealing with the corporation as a customer, the shareholder's rights are not limited by its regulations or by-laws not brought to his knowledge. Id.

The books of the company, in an action to charge a director with its debts by reason of the signing of a false report, are competent evidence against him so far as they relate to any entries legally contained in them which are relevant to the issues. Huntington *v.* Attrill, 118 N. Y. 365.

The stock transfer book of a corporation is admissible to show transfers of stock and the exact date thereof. Kraft *v.* Coykendall, 54 Hun, 633. The book is not simply a narrative of such transactions, but is the transaction itself in writing. Id.

The corporate books, which are proved to have been kept by its treasurer, in the business of the company, and to be in his handwriting, accompanied by proof of his death, are admissible in evidence. Chenango Bridge Co. *v.* Lewis, 63 Barb. 111. They are competent under the rule that entries made in the usual course of business by one who had no interest to falsify, should be received in evidence after his death. Id. In the case above cited, the books of a bridge company, proved by its treasurer to have been kept by him and to contain certain entries of tolls, as given to him by the toll-gatherer, coupled with proof by the latter that he had made correct reports of the tolls received by him, were held to be admissible in evidence. But, where the books of the company are proved by its treasurer to have been received by him as the company's books, upon his accession to office, and to contain an account of the tolls received for a period of several years previous to that time, they are not admissible as evidence to prove the amount of tolls received during that period, without the necessary and proper preliminary proof as to such tolls. Id. It is not sufficient to show that such books are said to be, or that they purport to be, the books of the corporation. Id. Nor is it enough, in order to make their contents evidence, to prove that they were in the handwriting of the former treasurer or toll-gatherer. Id.

Entries in the corporate books are admissible against one who was a stockholder, director and vice-president of the company and had access to and examined the books. First Nat. Bank *v.* Tisdale, 84 N. Y. 655. He is chargeable with knowledge of the entries. Id. ; Allen *v.* Coit, 6 Hill, 318 ; Heartt *v.* Corning, 3 Paige, 566. It is not essential that the entries should

be proved by the clerk who made them. Id. See Ocean Nat. Bank v. Carll, 55 N. Y. 440.

Corporate books are not only evidence of the corporate acts when these need to be proved, but are to some extent evidence against stockholders who are chargeable with knowledge of their contents. Blake v. Griswold, 103 N. Y. 429.